JOHN NICHOLS *vs.* THE CITY OF NEW BRITAIN.

First Judicial District, Hartford, March Term, 1905.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, JS.

During an epidemic of smallpox the defendant city engaged the services of the plaintiff, who was in " the hack business," to carry smallpox patients to and from a hospital and house of detention, and directed him to keep his hack, when not in actual use for this purpose, at first under a shed near the house of detention, and afterwards upon the hospital premises where it was exposed to and injured by the weather. The trial court found that the plaintiff was under no contract obligation to continue to transport patients for the city after he had been directed to keep his hack at the hospital; that after proper disinfection he might have removed it at any time; that he was induced to continue the service because of the unusually high compensation he received from the city for such transportation; and that when the epidemic was over and the hack had been disinfected by the city, the plaintiff, although requested to remove it, failed to do so. *Held* that upon these facts, which the evidence warranted the trial court in finding, its conclusion that the city was not liable for detaining the hack, nor for injuries thereto caused by exposure to the weather, was amply justified.

The plaintiff's final bill for services, which was presented after the epidemic was over, contained no charge or claim for injury to the hack. *Held* that this was admissible as tending to prove that the plaintiff's present claim for damages was an afterthought.

Upon his cross-examination the plaintiff stated that after presenting his final bill for services to the city he sent a later one for injuries to the hack. *Held* that upon his further cross-examination it might be shown that what the plaintiff meant by the later bill was his request to the city to buy the hack, and a resolution for its purchase which he caused to be presented to the common council.

The failure of a party to assert his claim at the natural and proper time is some evidence, although it may be slight, that the claim is unfounded.

Submitted on briefs March 7th—decided April 20th, 1905.

ACTION to recover damages for detaining the plaintiff's hack, used for the transfer of smallpox patients, and for permitting it to be injured by exposure to the weather, brought to the Court of Common Pleas in Hartford County

where the defendant suffered a default and was heard in damages to the court, *Peck, J.;* facts found and judgment rendered for the plaintiff for nominal damages only, and appeal by him for alleged errors in the rulings of the court. *No error.*

· *Bernard F. Gaffney*, for the appellant (plaintiff).

*Frank L. Hungerford*, for the appellee (defendant).

TORRANCE, C. J. The complaint alleges, in substance, that the city detained the hack against the plaintiff's will, refused to permit him to take it away, kept it in its own possession and control, and so negligently cared for it that by exposure to the weather it became almost valueless. It further alleges that the hack is still in the possession of the defendant, that the plaintiff has been wholly deprived of its use, and that the hack is of little or no value. The defendant under its notice, filed after the default, denied these allegations.

The salient facts found are the following: In 1901 an epidemic of smallpox broke out in New Britain, and a health committee was appointed by the common council of the city, to whom was committed the "charge over all matters pertaining to treating and checking the epidemic." The committee erected a smallpox hospital, and provided a house of detention situated about a mile from the center of the city, and at a considerable distance from the hospital. The plaintiff, when the epidemic broke out, was "engaged in the hack business" in New Britain. The health committee engaged "the services of the plaintiff as a carrier" to carry parties · to and from the hospital, and persons to and from the house of detention, and the plaintiff used for these purposes the hack here in question. To prevent the spread of the disease, the health committee told the plaintiff that he would have to keep the hack used in the transportation of patients, when not in use, in a shed near the house of deten-

tion, and he did so for a time. Complaint was made by the
policemen on guard at the house of detention " of the hack's
being kept " there, and the committee then " ordered the
plaintiff to remove it to the isolation hospital," and he did
so. There was no shed at the hospital, and the hack left
there was exposed to the weather. Thereafter, when it be-
came necessary for the plaintiff to use the hack in the busi-
ness for which he was engaged by the health committee, he
drove his horses to the hospital, attached them to the hack,
and after using it in said business returned it to the hospital
and left it there. The hack received great injury while kept
at the hospital, from exposure to the weather and from pa-
tients at the hospital. " The health committee ordered the
plaintiff to leave the hack on the premises of the isolation
hospital while it was being used for the transportation of
smallpox patients, and they would not have permitted it to
be removed from said location, except for such use, while it
was being used for such transportation. But I do not find
that the plaintiff was under any compulsion or obligation to
continue to transport patients for the city, nor that he
would not have been permitted to remove his hack from said
hospital, after proper disinfection, if he had ceased to use it
for that purpose. The plaintiff was induced to continue
such service and to leave his hack at said hospital by reason
of the unusually high compensation paid to him by the city
for his services in such transportation. He had made no
contract with the city as to the duration of such service, but
was called upon from time to time, as such service was re-
quired. . . . When said epidemic was over, the health com-
mittee caused said hack to be disinfected, and notified the
plaintiff that he could remove the same from said hospital;
but he did not remove the same, and at the time of the trial
it still remained on the grounds of said hospital in a dilapi-
dated condition."

In the memorandum of decision the court has further
found that " the plaintiff's hack was not detained by the
city against the plaintiff's will, but that, on the contrary, he
not only consented to its detention but himself did the acts,

the placing of the hack in an exposed location, of which he now complains, having been induced thereto by the hope of making a large profit from his employment by the city."

The evidence certified to this court amply justified the court below in finding the facts as above stated, and upon that finding it was amply justified in rendering judgment for nominal damages only; nor did it err in refusing to correct the finding as claimed upon this appeal.

Two rulings upon evidence remain to be considered. The court finds that after the epidemic was over, the plaintiff urged the city to buy said hack, and procured to be brought before the court of common council a resolution to that effect, which was rejected; also that the plaintiff made no claim to the city for damages for injury to the hack "prior to the bringing of this action." As a part of the evidence tending to prove that the plaintiff had made no claim for damages to the hack prior to bringing suit, the defendant offered in evidence the final bill rendered by the plaintiff to the city, after his employment by it was ended, for his services up to that time, which contained neither charge nor claim of any kind for damages to the hack. The plaintiff objected generally to its admission, but the court allowed it to come in for the purpose for which it was offered.

The failure to assert a claim at a time and place when and where it would be natural and proper to make such assertion, is some evidence, though it may be slight evidence, that the claim was an afterthought. The plaintiff's failure to make a claim for damages to the hack, in his final bill, was in the nature of an admission inconsistent with the claim made in this action, and was admissible against him. *Wheeler* v. *Thomas*, 67 Conn. 577, 579.

Upon cross-examination the plaintiff stated that after presenting his final bill, he later sent to the city a bill for injuries to the hack. Against the plaintiff's objection the defendant, by further cross-examination of the plaintiff, was. allowed to show, and did show, that what plaintiff meant by the above statement was that he had asked the city to.

buy the hack, and had introduced before the common council a resolution to that effect, as hereinbefore stated. Both of the above rulings were correct.

There is no error.

In this opinion the other judges concurred.