[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT AGAINST DEFENDANT E.G. HARVIN COMPANY AND E.G. HARVIN
The above-captioned case comes before this court for a hearing in damages after the entry of a default against E.G. Harvin Company and E.G. Harvin individually. Both of these parties were defaulted for failure to plead on January 24, 2000 (#237.00 and #238.00). Notice of the date, place and time of the hearing in damages was provided to both defendants in the form of a letter from the court clerk dated March 10, 2000 and mailed to their last known address.
The effect of a default is to establish the factual allegations made in the complaint. Costello v. Hartford Institute ofAccounting. Inc., 193 Conn. 160, 161, n. 1 (1984). Where a default is entered on an unliquidated claim the plaintiff must establish the extent of the damages caused by the conduct alleged. Mechanics Savings Bank v. Tucker, 178 Conn. 640, 644
(1979); United National Indemnity Co. v. Zullo, 143 Conn. 124, 130
(1956). CT Page 4165
In their complaint, Anna Yale and Edwin Yale alleged that an insurance salesman named Guy Garofalo engaged in churning life and health insurance policies and annuities which he sold to the Yales. They alleged that he and the insurance companies and agencies whose policies he sold them profited from the premiums paid, but despite the huge numbers of sales and surrenders of policies, they were left with no coverage and no benefit. The plaintiffs allege that E.G. Harvin Company is liable for negligence, intentional infliction of emotional distress, fraud, and violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stats. §§ 42-110a, et seq. (Revised complaint, May 5, 1998, counts 59-62.) In counts 63 and 64 of the revised complaint, the plaintiffs name E.G. Harvin individually as a defendant. The allegations of those counts repeat the allegations made against E.G. Harvin Company and allege that defendant Harvin is liable for violations of the Connecticut Unfair Trade Practice Act and for negligence in failing to supervise Guy Garofalo's sales to the plaintiffs.
At the hearing in damages, the plaintiffs presented as a witness plaintiff Gary Yale. He testified that he had not purchased any insurance policies from Mr. Garofalo himself, but that his mother had allowed Mr. Garofalo to write checks for premiums for the various insurance policies and annuities that Mr. Garofalo advised her to purchase. The checking account from which these payments were made was a joint account of Anna Yale and her adult son, plaintiff Edwin Yale, who is disabled because of a head injury he suffered in the 1950's. Edwin Yale testified that he knew that Mr. Garofalo had befriended him and was buying insurance policies for him but he was unable to follow the transactions and simply left it to Mr. Garofalo to act on his behalf. Anna Yale, an elderly woman who finished only nine years of school, similarly regarded Mr. Garofalo as a friend whose insurance purchases she blindly trusted. Anna Yale had in her account the proceeds from a sale of land. The same account, which was a joint account with Edwin Yale, contained his receipts of disability benefits accumulated since the 1950's while he lived with his mother at her home.
The plaintiffs established through the testimony of Brendan Toomey, an insurance agent, that an insurance salesman who sells a policy receives a commission and that terminating one policy to purchase a new one will result in greater commissions to the salesman than if a policy is left in force. CT Page 4166
The plaintiffs presented evidence that six policies insuring Edwin Yale were issued through E.G. Harvin Company while Guy Garofalo was a salesman for that agency and while E.G. Harvin was his supervisor. Forty-three policies were issued through that agency insuring Anna Yale or various of her children and grandchildren that she designated on the policies or annuities.
No evidence was presented to establish that Gary Yale purchased any policy or paid any premium.
At the hearing in damages, the plaintiffs sought to establish the amount of their loss by tracing the purchase and surrender value of each policy, and claiming interest on the various premiums paid. This method fails to reflect the fact that what actually happened was that a policy was instituted and then cashed out, and new policies were bought with the proceeds. In their calculation, the plaintiffs have thus claimed the same dollars lost as though they had been lost in full in each transaction. This method overstates the losses. The court finds that the correct method of computing damages is to total the premiums paid less the surrender value recovered for each policy or annuity. Based on the testimony and exhibits, the court finds the proven actual losses to be as follows for each of the policies that the plaintiffs proved they bought. As to each policy, the court has calculated the amount of loss, calculated as the amount of premiums paid less the surrender value received. Where the amount paid to the plaintiff on surrender was greater than the premiums paid, the court has found no loss, since the insurance was apparently in effect until surrender, such that coverage was provided:
Security Connecticut Policies
 863872W $12,212 872902E 2,200 790660W 50,499 _______ $64,911
 Kemper Life Insurance Policies
1380944 $1,357 1448913 2,146 5022677 3,762 CT Page 4167 1422173 13,170 1332347 830 1498526 695 5019810 11,447 1553178 1,312 1366168 1,572 1531702 177 1531704 545 1531705 762 1531731 77 1531732 141 1530115 356 1530116 766 ________ $39,115
Philadelphia Life Insurance Policies
 8038524 $5,800 2300006683 1,200 80418770 3,200 _______ $10,200
 Great American Life Insurance Policies
 7004268 $2,000 7009142 103 7008549 747 7009199 337 7008470 1,224 ______ $4,411
 Central United Life Insurance Company
 5560002521 $2,450 Unclassified policy 696 60006992 1,704 ______ $4,850
 Golden Rule Insurance Company
8515112 $1,398 CT Page 4168 58515555 1,403 58515111 1,322 ______ $4,123
Federal Kemper Insurance Company
 743761 $1,596 744867 387 4000383 1,420 4000502 3,150 4007040 1,381 402353 3,623 ______ $11,557
 TOTAL: $139,167
The court further finds that the conduct that is established by the default deprived plaintiffs Anna Yale and Edwin Yale of the investment value of their money, which the court calculates, based on the above losses incurred in and before 1992, to be $97,416.90 ($139,167 × 10% × 7 years).
The plaintiffs have sought damages for additional payments made, however, their proof did not establish that these payments related to policies procured through the E.G. Harvin Company.
Because the lost premiums were paid from commingled funds, the court finds that, as urged by the plaintiffs, the award should be divided evenly between them.
With regard to their claim for intentional infliction of emotional distress, Plaintiffs Anna Yale and Edwin Yale also seek damages for emotional distress they suffered. They did not establish that such damages were caused by the intentional actions of E.G. Harvin Company or E.G. Harvin, but only by the intentional acts of Guy Garofalo. Plaintiff Gary Yale, who did not make any purchases from Garofalo, did not establish that the emotional distress he suffered on learning of the plight of his mother and brother was caused by a breach of any duty owed to him by these defendants and alleged in the complaint. See Clohessy v.Bachelor, 237 Conn. 31 (1996).
With regard to the CUTPA claims, the plaintiffs are entitled to CT Page 4169 recover their attorney's fees. They presented evidence from which this court determines that they have incurred legal expenses in the amount of $24,000.00 (160 hours × $150/hour) in connection with their claims against these two defendants, though greater expenditures of counsel's time was devoted to claims against other defendants.
The court does not award punitive damages.
Reduction of Damages from Partial Compensation
The plaintiffs acknowledge that they have received compensation in the amount of $102,715 from the insurers that issued the above policies sold through the E.G. Harvin Company agency. They have thus been compensated for part of their proven loss, and this amount must be deducted from the finding above to prevent double recovery for the same lost. The plaintiffs are therefore awarded $157,868.90 ($139,167 + $97,416.90 - $102,715 + 24,000).
Conclusion
Judgment shall enter in favor of Anna Yale against E.G. Harvin Company in the amount of $39,467.23 and against E.G. Harvin individually in the amount of $39,467.23. Judgment shall enter in favor of Edwin Yale against E.G. Harvin Company in the amount of $39,467.23 and against E.G. Harvin individually in the amount of $39,467.23. The plaintiffs shall recover their statutory court costs upon filing a bill of costs.
Beverly J. Hodgson Judge of the Superior Court