[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case arises out of a fatal automobile accident caused by the alleged negligence of a commercial truck. The plaintiff, Canal Insurance Company, has brought a declaratory judgment action to determine coverage under a policy of insurance. After denying the plaintiffs motion for summary judgment, this court granted the plaintiffs motion to reargue. CT Page 8869 This court then heard argument on the renewed motion for summary judgment.
The plaintiff issued an insurance policy covering Barbara Haniewski, d/b/a Salguad Warehouse Transport (Salguad) and Eagle Leasing on February 27, 1996. Attached to the insurance policy was an endorsement, conforming to regulations for motor carriers. See 49 C.F.R. § 387.15. The endorsement required the plaintiff to send notice to Salguad thirty-five days in advance of cancelling the insurance policy. The endorsement also required the plaintiff to give the ICC thirty days notice of cancellation if Salguad was under the ICC's jurisdiction.
Salguad failed to pay its premiums. The plaintiff sent timely notice to Salguad but failed to send notice to the ICC or any successor agency. The notice to Salguad stated that the policy was cancelled effective 12:01 a.m. on September 12, 1996.
On September 12, 1996, at 12:31 p.m., Carlos Reummelle, a driver for Salguad, was involved in a fatal automobile accident. Jing He was killed in the accident.
On September 28, 1998, the plaintiff filed a declaratory judgment action seeking a judgment that its insurance policy did not cover Salguad or Eagle Leasing for the accident. On November 9, 1998, Michael Jon Barbarula, administrator of the estate of Jing He, was added as a party defendant.
On March 2, 2000, the plaintiff filed a motion for summary judgment. This court denied that motion. See Canal Ins. Co. v. Haniewski, Superior Court, judicial district of New Haven at New Haven, Docket No. 417942 (July 26, 2000) (27 Conn.L.Rptr. 662). The court determined that an endorsement to the insurance policy that required the plaintiff to give the Interstate Commerce Commission (ICC) thirty days notice of cancellation was still applicable, despite the defunct status of the ICC. The plaintiff, in its motion to reargue and subsequent memoranda in support of summary judgment, claims that it was not required to give the ICC, or any other federal governmental agency, notice of cancellation of the policy because the insured-defendants were not subject to ICC jurisdiction. The plaintiff has also raised the issue of standing, arguing that the estate of the victim lacks standing to oppose summary judgment. Finally, the plaintiff seeks judgment as to the defaulted parties.[1]
 I
Standing, it has often been stated, depends upon proof of CT Page 8870 aggrievement. Hartford Federal Savings Loan Assn. v. Tucker,13 Conn. App. 239, 245, 536 A.2d 962, cert. denied, 207 Conn. 805,540 A.2d 373 (1988); but see Gladysz v. Planning Zoning Commission,256 Conn. 249, 255-58, ___ A.2d ___ (2001) (distinguishing aggrievement from standing in the context of zoning law). "[T]he fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. . . . The second prong of the aggrievement test requires the plaintiff to demonstrate that its asserted interest has been specially and injuriously affected in a way that is cognizable by law. . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) Hendel's Investors Co. v.Zoning Board of Appeals, 62 Conn. App. 263, 271, 771 A.2d 182 (2001). "[Standing is] ordinarily held to have been met when a complainant makes a colorable claim of direct injury [that the complainant] has suffered oris likely to suffer. . . ." (Emphasis in original.) Ramos v. Town ofVernon, 254 Conn. 799, 809, 761 A.2d 705 (2000). For purposes of this discussion, it is He's estate that complains against the granting of summary judgment.
"Persons who have been injured in an automobile accident are certainly proper parties to a suit by the liability insurer to determine the coverage of its policy . . . 20 J. Appleman, Insurance Law and Practice § 11371." (Internal quotation marks omitted.) Connecticut Ins.Guaranty Assn. v. Raymark Corp., 215 Conn. 224, 229, 575 A.2d 693
(1990). If Salguad is ultimately found legally responsible to He's estate for He's death, He's estate may seek to satisfy a judgment in its favor and against Salguad out of the insurance policy issued to Salguad by the plaintiff. General Statutes § 38a-321. Therefore, He's estate has a specific personal and legal interest in the subject matter of the suit. Moreover, if the court were to grant summary judgment in favor of the plaintiff, such a ruling would deny coverage to Salguad and remove the insurance policy as a fund from which to satisfy a judgment against Salguad. Thus, He's estate would be specially and injuriously affected. He's estate, therefore, satisfies both requirements for standing to object to the motion for summary judgment.[2] Indeed, it would seem to be a rare and strange case in which a proper party defendant would lack standing to object to the rendering of judgment against it.
Even if this were not so, however, the disposition of the plaintiffs motion would be no different. First, although only He's estate has formally objected to the plaintiffs motion, Eagle Leasing has adopted He's arguments. No one has denied that Eagle Leasing has standing to challenge the motion for summary judgment. "Since it is undisputed that CT Page 8871 one of the [parties] . . . is aggrieved . . . it is not necessary to resolve whether the other [parties] are aggrieved." Protect Hamden/NorthHaven from Excessive Traffic Pollution, Inc. v. Planning ZoningCommission, 220 Conn. 527, 529 n. 3, 600 A.2d 757 (1991).
Second, our rules of practice do not authorize the granting of summary judgment against a party simply because that party does not file an objection. Rather, "summary judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book §17-49. While the party opposing a summary judgment motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact; Practice Book § 17-46; Suarez v. Dickmont PlasticsCorp., 229 Conn. 99, 105, 639 A.2d 507 (1994); the Practice Book does not require the filing of an objection where such an issue of fact already exists. Nor does the law authorize the granting of a declaratory judgment against a party simply because he does not file an objection. Cf. UnitedIndemnity Co. v. Zullo, 143 Conn. 124, 120 A.2d 73 (1956) (declaratory judgment rendered in favor of defendants who failed to appear for trial). Because, as discussed infra, there exist genuine issues of material fact and since the plaintiff is not entitled to judgment as a matter of law, the motion must be denied even in the absence of a formal objection.
 II A.
Turning to the merits of the plaintiff's motion for summary judgment, the rule is that "[i]n deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book [§ 17-46]." (Citations omitted.) Raynorv. Hickock Realty Corp., 61 Conn. App. 234, 237, 763 A.2d 54 (2000). "Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment." United Services AutomobileAssn. v. Marburg, 46 Conn. App. 99, 110, 698 A.2d 914 (1997). "The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) River Dock Pile, Inc. v.Insurance Co., North America, 57 Conn. App. 227, 231, 747 A.2d 1060
(2000). CT Page 8872
 B.
The endorsement to the policy of insurance issued by the plaintiff, commonly called a MCS-90, states that "[t]he insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, within Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Highway Administration (FHWA) and the Interstate Commerce Commission (ICC). . . . Cancellation of this endorsement may be effected by the company or the insured by giving (1) thirty five (35) days notice in writing to the other party . . . and (2) if the insured is subject to theICC's jurisdiction, by providing thirty (30) days notice to the ICC. . . ." (Emphasis added.) This language is identical to the language required by 49 C.F.R. § 387.15 (1998).
No party disputes that the plaintiff gave proper notice to Salguad. The plaintiff, however, contends that Salguad was not under the ICC's jurisdiction and, therefore, that the plaintiff was not required to send notice to the ICC.
Whether Salguad was subject to ICC's jurisdiction is complicated by a change in the federal law. "Effective January 1, 1996, the ICC was abolished and its duties were transferred to the Department of Transportation and the newly created Surface Transportation Board [STB]. See Pub.L. No. 104-88, 109 Stat. 803 (1995)." Century Indemnity Co. v.Carlson, 133 F.3d 591, 595 n. 3 (8th Cir. 1998). One month and twenty-seven days after the effective date of this legislation abolishing the ICC, the plaintiff and Salguad entered into their insurance contract.
As this court held in its earlier decision in this case, quoting EmpireFire and Marine Ins. Co. v. Liberty Mutual Ins. Co., 117 Md. App. 72,699 A.2d 482 (1997), "pursuant to a savings provision contained in Section 204 of the [ICC] Termination Act, the rules and regulations promulgated by the I.C.C. continue in effect until revised or revoked by parties designated in the Act's savings provision." The ICC Termination Act, Pub.L. No. 104-88, 109 Stat. 803 (codified as amended in scattered sections of 49 U.S.C.), did not work substantive changes in the laws and regulations governing jurisdiction but merely transferred the ICC's jurisdiction to the Department of Transportation (DOT) and STB.[3]Owner-Operator Independent Drivers Assn., Inc. v. New Prime, Inc.,192 F.3d 778, 780 (8th Cir. 1999). "Congress retained the requirement that notices of cancellations of insurance must be filed in advance with the FHWA [Federal Highway Administration]." 61 Fed. Reg. 43816 (1996). CT Page 8873 This legislation is deemed to be read into the insurance policy as a matter of law. "It is well settled that an insurance contract must be read to include provisions that the law requires be included and to exclude provisions that the law prohibits. . . . Unless the agreement indicates otherwise, [an applicable] statute existing at the time an agreement is executed becomes a part of it and must be read into it just as if an express provision to that effect were inserted therein." (Citations omitted.) Harlach v. Metropolitan Property Liability Ins.,221 Conn. 185, 191-92, 602 A.2d 1007 (1992).
 C.
Turning to the question of jurisdiction, the MCS-90 states that "[c]ancellation of this endorsement may be effected by the company . . .if the insured is subject to the ICC's jurisdiction, by providing thirty (30) days notice to the ICC . . ." (Emphasis added.) The plaintiff argues that "it is undisputed that Salguad Warehouse Transport was not registered with ICC. The ICC had issued no permits or operating authority to Salguad. Therefore there was no reason for notice of the cancellation to be sent to the ICC or to its successor agency." He's estate does not seriously dispute that Salguad was not registered with the ICC or the STB. Rather, the estate argues that "even if Salguad was not registered . . . it would still be under the ICC's jurisdiction."
The question of registration, however, does not settle whether Salguad was under the ICC's jurisdiction. Salguad could have been required to register and neglected to do so, either intentionally or unintentionally.[4] The plaintiff has not directed the court to any evidence or presumption of law that dispels this scenario. Therefore, the court must determine if, as a matter of law, Salguad is entitled to summary judgment, regardless of whether it was required to be registered. Again, the fundamental issue, as defined by the MCS-90 endorsement, is whether Salguad, as the insured, is subject to the ICC's or successor's agency's jurisdiction.
To determine whether Salguad was subject to such jurisdiction, we look to the language employed by Congress. Lyng v. Payne, 476 U.S. 926, 937,106 S.Ct. 2333, 90 L.Ed.2d 921, reh. den., 478 U.S. 1031, 107 S.Ct. 11,92 L.Ed.2d 766 (1986). Effective January 1, 1996, 49 U.S.C.A. § 13501
(1998) states:
"The Secretary and the Board have jurisdiction, as specified in this part [49 U.S.C. § 13101 et seq.], over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property or both, are transported by motor carrier —
CT Page 8874 (1) between a place in —
(A) a State and a place in another State;
(B) a State and another place in the same State through another State;
 (C) the United States and a place in a territory or possession of the United States to the extent the transportation is in the United States
 (D) the United States and another place in the United States through a foreign country to the extent the transportation is in the United States; or
 (E) the United States and a place in a foreign country to the extent the transportation is in the United States; and
 (2) in a reservation under the exclusive jurisdiction of the United States or on a public highway."
The Board is defined as the STB. 49 U.S.C. § 13102 (1) (1998).
Thus, the ICC and its successors, first, may regulate only interstate carriers. Second, jurisdiction is limited to for-hire motor carriers. This is because motor carrier is defined as "a person providing motor vehicle transportation for compensation." 49 U.S.C.A. § 13102 (12). Third, the law exempts certain carriers from the requirements of MCS-90. Section 387.3 of Title 49 of the Code of Federal Regulations states "[t]he rules in this part do not apply to a motor vehicle that has a gross vehicle weight rating (GVWR) of less than 10,000 pounds."
The plaintiff has not shown the absence of a genuine issue of material fact with respect to these jurisdictional items. The plaintiff has not shown that Salguad was not engaged in interstate transportation of passengers or property. It has not shown that Salguad was not a person providing motor vehicle transportation for compensation.[5] And it has not shown that Salguad's GVWR was less than 10,000 pounds or that it was otherwise exempt from ICC jurisdiction.
As the movant, the plaintiff has the burden of demonstrating the lack of a genuine issue of fact. By relying solely upon Salguad's registration status, the plaintiff has failed to meet its burden. Accordingly, the court finds that a genuine issue of material fact exists as to whether the ICC, or any successor agency, had jurisdiction over Salguad, CT Page 8875 requiring notice of cancellation before the policy could be terminated.
 III
The plaintiff has also asked that the court enter judgment against the two defaulted parties, Salguad and Reummelle.
This is a declaratory judgment action, instituted to determine whether the plaintiff must provide insurance coverage to the defendants. The first count is directed against Salguad and the third count is directed against Reummelle. A declaratory action seeking a determination of insurance coverage is an action at law. See, e.g., Reed v. CommercialUnion Ins. Co., 60 Conn. App. 200, 204, 758 A.2d 914 (2000). "In an action at law, the entry of a default operates as a confession by the defaulted defendant of the truth of the material facts alleged in the complaint that are essential to a judgment. . . . The entry of a default does not constitute judgment, but it is an order that precludes the defendant from making any further defense insofar as his liability is concerned." (Citations omitted.) OG Industries, Inc. v. Mizzoni,23 Conn. App. 19, 22 n. 2, 578 A.2d 672 (1990); see United NationalIndemnity Co. v. Zullo, supra, 143 Conn. 129-30. "The failure of a defendant who has been duly served to appear and answer a complaint seeking a declaratory judgment constitutes an admission of every material fact pleaded which is essential to the judgment sought, but the court must, nevertheless, proceed to construe [such] facts or instruments set out in the complaint and enter judgment thereon; the default caused by the defendant's failure to appear and answer does not entitle the plaintiff to a judgment based on the pleader's conclusions." 22A Am.Jur.2d 866, Declaratory Judgments § 227 (1988); see United NationalIndemnity Co. v. Zullo, supra, 130-31 (in declaratory judgment action, judgment rendered for defendants who failed to appear for trial).
By defaulting, the defendants, Salguad and Reummelle, admit that Salguad failed to pay its premium and that the plaintiff gave Salguad a timely notice of cancellation. Admitting these material facts does not inescapably lead to the conclusion that the plaintiff is not required to provide coverage to Salguad and Reummelle. As discussed supra, there remains the genuine issue of fact as to whether the plaintiff was required to give notice to the FHWA in order to validly cancel the policy pursuant to the MCS-90 endorsement. In short, the material facts alleged in the complaint that are deemed admitted by the defendants' default are not sufficient to entitled the plaintiff to judgment, and the remaining fact that would entitle the plaintiff to judgment, namely whether Salguad was subject to the jurisdiction of the ICC, is a genuine issue of material fact. For this reason, the court does not enter judgment on the default against Salguad and Reummelle. CT Page 8876
 IV
A genuine issue of material fact exists as to whether the plaintiff canceled the insurance policy because the plaintiff has failed to demonstrate that it was not required to give notice to the ICC's successor agency. Moreover, the plaintiff is not entitled to judgment as to the defaulted defendants because, although those defendants have admitted certain material facts, those facts do not require the court to hold as a matter of law that the plaintiff properly canceled the insurance policy.
The plaintiffs motion for summary judgment is denied.
BY THE COURT
Bruce L. LevinJudge of the Superior Court